City of Williamsport and Pennsylvania Manufacturer's Association Insurance Co., Petitioners *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board, Dwight E. Schmuck and General Accident Group, Rspondents.

Argued June 6, 1980, before Judges WILKINSON, JR., MACPHAIL and WILLIAMS, JR., sitting as a panel of three.

*Charles J. Tague, Jr., Hager and Roesgen,* for petitioners.

*John R. Bonner, Casale & Bonner,* for respondents.

OPINION BY JUDGE WILLIAMS, JR., December 30, 1980:

This appeal arises from a dispute between two insurance companies as to which of them bears liability to pay workmen's compensation to Dwight E. Schmuck (claimant) after a second physically adverse incident in the course of his employment. The two companies involved are Pennsylvania Manufacturer's Association Insurance Company (PMA) and General Accident Group (General). Between the time of the first incident and the second, General had replaced PMA as insurance carrier for Schmuck's employer, the City of Williamsport.

The instant appeal is by PMA from an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's determination that the claimant's second adverse incident was but a recurrence of an initial disability suffered during the time PMA was the insurance carrier for the City of Williamsport, and that, therefore, PMA remained liable for the compensation.

The record establishes that claimant Schmuck was initially injured on February 14, 1977, while driving a bus for his employer. When the bus collided with another vehicle, the claimant was thrown against the steering wheel and sustained injury to his left shoulder. Schmuck was later diagnosed as having subcoracoid and subscapular bursitis in the left shoulder as a result of the accident. This condition produced persistent pain and persistent limitation of motion, such that the claimant had to undergo surgery to remove the bursa, medical procedures for a dislocated shoulder, and the implantation of staples to stabilize the shoulder joint.

For that injury PMA paid total disability compensation. On May 6, 1977, the claimant signed a Final Receipt closing out the injury of February, 1977. However, on May 9, 1977, a Supplemental Agreement was filed reciting that the claimant had returned to work on April 25, 1977, and that the disability recurred on April 27, 1977.

On March 20, 1978, Schmuck signed another Final Receipt, terminating the Supplemental Agreement. He returned to work that day; but the very next day he suffered an occurrence that created the point of contest in this case.

On March 21, 1978, Schmuck was again driving a bus, this time at the site of his employer's garage. As he was driving, the bus struck a bump, which caused the steering wheel to start spinning. When he grabbed the wheel he experienced severe pain in his left shoulder. The occurrence produced a new claim petition; and no party in this case is contesting Schmuck's right to disability compensation. What is contested is which of the two insurance companies must pay it. For, at the time of the March 21 incident, General had succeeded PMA as the insurance carrier for the employer.

After an initial hearing, the referee issued an interim order directing General to pay compensation from March 22, 1978.[1] However, upon a subsequent, full hearing the referee determined that Schmuck had suffered a recurrence of the total disability that followed the February, 1977, injury. Accordingly, the referee concluded that PMA, the carrier at the time of the initial injury and disability, remained liable. When the Board affirmed, PMA's appeal to this Court followed.[2]

The appellant asserts that the referee and the Board committed an error of law in concluding that the incident of March 21, 1978, was but a recurrence of the prior disability, rather than a new, independently compensable injury. PMA also contends that there was not substantial evidence to support the referee's finding of fact that the incident of March 21, 1978, was a recurrence of the prior disability.

Our approach to the resolution of this case is guided by the decision of this Court in *United Industrial Maintenance v. Workmen's Compensation Appeal Board*, 46 Pa. Commonwealth Ct. 156, 405 A.2d 1360 (1979). In *United Industrial Maintenance* we held, in effect, that if a compensable disability results directly from a prior injury but manifests itself on the occasion of an intervening incident which does not contribute materially to the disability, then the intervening incident does not create a separately compensable injury for purposes of a contest between two insurance carriers. *See Pittsburgh Outdoor Advertising Co. v. Workmen's Compensation Appeal Board,*

---

[1] Pursuant to Section 410 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §751.

[2] In affirming the referee's award the Board deleted a grant of counsel fees.

39 Pa. Commonwealth Ct. 338, 395 A.2d 648 (1978).
Also, in the *United Industrial Maintenance* case, this
Court held that whether or not the intervening inci-
dent caused or contributed to the disability is a ques-
tion of fact to be determined by the fact-finder.
*Supra* at 160, 405 A.2d at 1362.

In the instant case the only medical evidence be-
fore the referee came from Dr. Fred R. Amsler, an
orthopedic surgeon who attended the claimant after
the injury of February, 1977, and after the incident
of March 21, 1978.

Dr. Amsler's testimony, which was presented on
behalf of General, recounted the fact that in late 1977
the claimant was advised to *attempt* a return to work
on a *trial* basis.[3] The doctor described Schmuck's
physical problems as consisting of vascular spasms,
arthralgia, and low grade capsulitis in the shoulder.[4]
As a result of his condition the claimant had a low
level of stress tolerance, which created in him an
anxiety that pain would attend his physical motions.

According to Dr. Amsler the incident of March
21, 1978, was merely an example of the claimant ex-
ceeding the low level of stress he could tolerate as a
result of the 1977 injury. The doctor was of the
opinion that the claimant's physical problems existed
after the February, 1977, injury, and were *all* directly
or indirectly related to that injury and not to any

---

[3] The record indicates that the claimant attempted to return
to work in November, 1977, after the initial injury, but without
success.

[4] In general, lay terms the claimant's condition was described
as entailing recurrent spasms of the veins and blood vessels; in-
flammation of the soft tissue, nerves, tendons and muscles sur-
rounding the shoulder; and pain in the shoulder joint. As a re-
sult, any stress, sudden jerking, pulling or pushing would cause
pain.

new injury. It was the doctor's opinion that the incident of March 21, 1978, did not constitute a new injury, did not alter the underlying pathology of the claimant's upper extremity, or change in any way the underlying disability resulting from the February, 1977, injury. According to Dr. Amsler, the event of March 21, 1978, represented an unsuccessful attempt by the claimant to return to work. PMA offered no evidence to rebut the doctor's testimony.

In a workmen's compensation case our scope of review is limited to determining whether constitutional rights were violated, an error of law committed or whether necessary findings of fact were unsupported by substantial evidence, leaving questions of evidentiary weight and credibility to the referee. *E.g., Owens v. Workmen's Compensation Appeal Board,* 39 Pa. Commonwealth Ct. 510, 395 A.2d 1032 (1979). Within that scope of review the case at bar presents only two issues: (1) whether the evidence supported the referee's finding that the incident of March 21, 1978, was but a recurrence of the prior disability; and (2) whether the referee and the Board erred as a matter of law in concluding that the incident of March 21 did not represent a new, separately compensable injury. Based on the medical testimony of Dr. Amsler, which was unequivocal and unrebutted, it is our conclusion that the challenged finding was supported by the evidence. Following from that and our decision in the *United Industrial Maintenance* case, we conclude that no error of law was committed in imposing liability on PMA for the disability here involved.[5] Therefore, we affirm the order of the Board in this case.

---

[5] It must be noted that the referee treated Schmuck's claim petition as one to set aside the Final Receipt of March 20, 1978.

624

ORDER

AND Now, the 30th day of December, 1980, Pennsylvania Manufacturer's Association Insurance Company as insurance carrier for the City of Williamsport, Pennsylvania, is directed to pay workmen's compensation benefits to claimant Dwight E. Schmuck at the rate of $149.23 beginning March 22, 1978 and continuing into the indefinite future according to the provisions of The Pennsylvania Workmen's Compensation Act.

It is further ordered, however, that payment for the period beginning March 22, 1978, to the date payment is actually made by the said insurance carrier to the claimant, shall be paid over to General Accident Group as reimbursement for payments to the claimant pursuant to the interim order of August 14, 1978. Upon the completion of that reimbursement, payments pursuant to this order shall be made directly to the claimant.

The claimant shall pay his own counsel fee and according to the arrangement with counsel as approved.